Frank JURECZKI, Plaintiff-Appellant,

v.

The CITY OF SEABROOK, TEXAS; Curtis White, Individually and in Capacity as Building Inspector of the City of Seabrook, Texas; and Bill Kerber, in his Official Capacity as Chief of Police of the City of Seabrook, Texas, Defendants-Appellees.

No. 81–2016.

United States Court of Appeals, Fifth Circuit.

Feb. 26, 1982.

Thomas C. Petley, Houston, Tex., for plaintiff-appellant.

Saccomanno, Clegg, Martin & Kipple, Bruce L. James, Martha A. Evans, Houston, Tex., for defendants-appellees.

Before WISDOM, SAM D. JOHNSON and GARWOOD, Circuit Judges.

WISDOM, Circuit Judge:

Frank Jureczki appeals a district court order dismissing his complaint for redress of an alleged violation of his due process rights. We reverse and remand the case to the district court with instructions to conduct a hearing on the defendants' motion to dismiss and on the issue of damages, should there be a trial on the merits.

## I.

On August 4, 1980, Frank Jureczki, the plaintiff/appellant, brought an action for equitable relief and monetary damages under 42 U.S.C. § 1983, the fourteenth amendment of the U. S. Constitution, and the Constitution of the State of Texas. The plaintiff sought such relief against the City of Seabrook, Texas; Bill Kerber, the Chief of Police; and Curtis White, the City Building Inspector. The plaintiff had been arrested for failure to obtain a building permit for new construction, as required by the Seabrook Comprehensive Zoning Ordinance No. 78–12 (September 5, 1978).

In his complaint the plaintiff contends that he was denied due process because he was not notified of the violation and was not given a reasonable time to comply before he was arrested and subjected to criminal proceedings. On appeal the plaintiff concentrates on the fact that section 103.2 of the Southern Standard Building Code itself expressly requires written notice of a violation along with instructions as to the conditions under which work may be done. These provisions are incorporated in the Seabrook Zoning Ordinance.[1] Furthermore, article three of the ordinance provides for a Board of Adjustment "to authorize upon appeal in specific cases such variance from the terms of [this zoning] ordinance as would not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of this ordinance would result in unnecessary hardship". Under the ordinance, the Board of Adjustment has the power to "reverse any order, requirement, decision or determination of the Building Inspector".

The plaintiff was arrested twice and subjected to three municipal criminal complaints for his alleged continuing failure to obtain a building permit for new construction.[2] After the first arrest, the plaintiff applied for and was granted a permit with instructions to move the building, add a rafter, and replace the thatched canopy with a corrugated tin roof. Six days after the permit was granted Jureczki was arrested again, brought to jail, booked, photographed, and fingerprinted. On appeal, in the trial de novo in Harris County court, he was vindicated. All three cases were dismissed on the prosecutor's motion, on the ground that "No written notice of violation, or instructions to provide for compliance, were given plaintiff as required by the City ordinance alleged in its inclusion of Standard Building Code 1976 Edition, was given." After his second arrest and before the first trial, the plaintiff filed his complaint in the federal court together with a motion

1. The Southern Standard Building Code, § 103.2, provides that written notice and explanations be given for alleged violations of the Code:

    Upon notice from the Building Official, work on any building or structure that is being done contrary to the provisions of this code or in a dangerous or unsafe manner, shall be immediately stopped. Such notice shall be in writing and shall be given to the owner of the property, or to his agent, or to the person doing the work, and shall state the conditions under which work may be resumed. Where an emergency exists, written notice shall not be required to be given by the Building Official.

    On appeal the plaintiff abandoned his contention that the ordinance was unconstitutional. Instead, relying on § 103.2, he contends that the defendants' failure to follow the notice procedure contained in the ordinance was a violation of due process. *United States ex rel. Accardi v. Shaughnessy*, 1954, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681.

2. The plaintiff erected a "sun barrier", a four-posted, thatched (palm) roof canopy over picnic tables outside of his restaurant, "Frank's Shrimp Hut". He alleges that White, the City Building Inspector, told him that no building permit would be required.

for a temporary restraining order. The district court held a conference in chambers on August 4, 1980, at which the defendants agreed not to rearrest the plaintiff and the plaintiff agreed not to occupy the structure allegedly built without a permit. At the same time, the parties agreed to a hearing to be held August 26, 1980, on the plaintiff's request for a preliminary injunction.

On August 25, 1980, the defendants answered, asserting that "no action should be maintained" because: (1) The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits any injunction; (2) equity will not interfere with the enforcement of criminal law; and (3) "the abstention doctrine and the doctrine of 'Our Federalism' teaches that federal courts should refrain from hearing constitutional challenges to state actions under certain circumstances in which federal action is regarded as an improper intrusion on the right of a state to enforce its own laws in its courts and this court should abstain to await authoritative interpretation of the state statutes by a state court." The defendants' trial brief relied strongly on *Younger v. Harris*, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669.

At the hearing, August 26, 1980, while the state criminal proceedings were pending against the plaintiff, the defendants filed their trial brief entitled "Memorandum of law in support of defendant's motion to dismiss and denial of injunctive and declaratory relief". No separate motion to dismiss was ever filed. If such a motion was presented, the defendants presented it orally in the absence of the plaintiff's counsel who arrived ten minutes late for the hearing. The trial judge's order granting the motion states that "the court . . . consider[ed] the motion of Defendants requesting that this cause be dismissed". The court made no findings of fact or conclusions of law, but from information obtained from the courtroom deputy and the defendants' counsel, the plaintiff's counsel learned that the trial judge had relied on *Younger v. Harris*. When the plaintiff's counsel arrived at court ten minutes late for the hearing, he was told that the case had been dismissed.

Until shortly before the hearing, the plaintiff had not learned of the provision in the ordinance requiring notice. The plaintiff filed a motion to reconsider the dismissal and attached his trial brief. The brief was based, in part, on the existence of the notice procedure in the ordinance, but argued in depth that this case came within the exceptions to *Younger v. Harris* and its progeny. The district court did not deny this first request to reconsider until October 22, 1980, stating that it had dismissed the action "on the merits, not because attorney for Plaintiff was late for the hearing". This statement may mean that the trial judge treated the defendants' answer and memorandum as a motion for summary judgment, under Fed.R.Civ.P. 56, rather than as a motion to dismiss under Fed.R. Civ.P. 12(b) for failure to state a claim. In any event the court did not have the benefit of the plaintiff's argument distinguishing *Younger v. Harris*, and the plaintiff did not have the benefit of notice of any motion to dismiss.

Significantly, on the previous day, the 21st of October, the Harris County criminal court had dismissed all the state prosecutions against the plaintiff, thereby removing *Younger v. Harris* as an obstacle to relief after that date. The state court acted on the district attorney's motion to dismiss the cases for lack of notice required by the ordinance. On November 3, 1980, the plaintiff filed a second motion to reconsider, pointing out that all state proceedings against the plaintiff had been dismissed. On December 18, 1980, the court denied, without comment, this second motion to reconsider dismissal. If, indeed, the order of dismissal rested on *Younger v. Harris*, the trial judge should have reconsidered his decision.

On January 9, 1981, the plaintiff filed his notice of appeal. That same day, the district court entered its final judgment dismissing the plaintiff's suit on the merits. The plaintiff amended his notice of appeal on January 15, 1980, to reflect the final judgment. Jureczki contends that the dis-

trict court erred when, without a hearing at which his counsel was present, it dismissed the complaint with prejudice for failure to state a claim. He contends also that the district court erred in not reconsidering the dismissal at a time when there were no state criminal proceedings pending against the plaintiff. In addition, the plaintiff maintains a claim for damages against the City of Seabrook and against its building inspector individually and in his official capacity.

## II.

■ The district court erred when, in effect without a hearing, it dismissed the plaintiff's case with prejudice. It has long been the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *Conley v. Gibson*, 1957, 355 U.S. 41, at 45–46, 78 S.Ct. 99, at 102, 2 L.Ed.2d 80. In denying the plaintiff's request for reconsideration, the district court stated that it had dismissed the action "on the merits". We are uncertain what this means; when a court abstains, it does not reach the merits. Whatever the district court meant by that phrase, its action is contrary to the well-established policy of the federal rules that the plaintiff be given every opportunity to state a claim. We echo our earlier position on the question of dismissal with prejudice: "In the decided cases it is recognized that the dismissal of a case with prejudice is a drastic remedy to be used only in those cases where a lesser sanction would not better serve the interests of justice." *Brown v. Thompson*, 5 Cir. 1970, 430 F.2d 1214, 1216.

## III.

■ The trial order dismissing the complaint came without notice to the plaintiff, without an adequate hearing, and without an explanation. The answer was served on the plaintiff only one day before the hearing for a temporary injunction, but as to the abstention issue it cannot be said that he was prejudiced by lack of notice, for his memorandum filed the day of the hearing shows that he was fully prepared to argue that the action came within recognized exceptions to *Younger v. Harris.* The prejudice came from the trial judge's haste in dismissing the complaint and in refusing to reconsider his order, at least to the extent of allowing plaintiff's counsel an opportunity to argue his case. The trial judge's grievous error was in failing to reconsider the order at a time when there were no criminal proceedings pending against the plaintiff.

■ As a general guide to the interpretation of the Federal Rules of Civil Procedure, the Supreme Court has said: "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 1957, 355 U.S. 41, at 48, 78 S.Ct. 99, at 103, 2 L.Ed.2d 80. A fortiori, when the plaintiff's only misstep was in having been ten minutes late for the hearing, it would be contrary to the *Conley v. Gibson* principle to allow the defendants' "implied" motion determine the outcome of this case.

■ Jureczki's counsel states that he was unavoidably detained at his office and that he had advised two deputy clerks and one of the trial judge's law clerks that he would be detained. At that, he arrived at court only a few minutes late. The defendants argue that the failure of plaintiff's counsel to appear on time was a proper basis for the district court's dismissal of the case. The district court, however, explicitly explained in its first order denying reconsideration that it had dismissed the action "on the merits, not because attorney for Plaintiff was late for the hearing". *See Silas v. Sears, Roebuck & Co., Inc.*, 5 Cir. 1978, 586 F.2d 382. Although we recognize the authority of a district judge, in the proper case, to dismiss a complaint, with or without prejudice, in the circumstances of this case it would have been an abuse of discretion to dismiss the complaint *with prejudice*

because of the plaintiff's counsel's slightly tardy appearance.[3] A litigant's right to a day in court cannot be treated so cavalierly.

The absence of findings of fact and conclusions of law and the trial judge's explanation, in his order denying reconsideration, that he was deciding "on the merits" make it difficult for this court to review his abrupt dismissal of the complaint. On the date of the hearing, August 26, 1980, when he could have had the benefit of the plaintiff's trial memorandum and argument, he could have unambiguously accepted or rejected the counsel's argument on *Younger v. Harris*. At the time of the second application for reconsideration, November 3, 1980, no criminal proceedings were pending against Jureczki and the *Younger v. Harris* doctrine was inapplicable. Moreover, the effect of the notice provision in the zoning law strongly suggests that the plaintiff should have been given the opportunity to amend the complaint.

### IV.

We reverse the district court and remand the cause to that court with instructions to allow the plaintiff to amend his complaint. The court should conduct an adequate hearing on any motion to dismiss and should try the issue of damages, should the defendants be subject to damages and should there be a trial on the merits. We adopt the plaintiff's submission that the statute of limitation expires in July of 1982, so as not to prejudice the plaintiff further. We express no opinion on the legal correctness of the defendants' motion to dismiss either implied from the trial brief or orally presented, or any other motion the defendants may see fit to file. We express no opinion whether the plaintiff's complaint as it now stands or as it might be amended states a claim.

REVERSED AND REMANDED.

---

3. The district court gave no reasons for its dismissal of the plaintiff's case with prejudice. A court sua sponte may dismiss a case with prejudice under F.R.Civ.P. 41(b). *Link v. Wabash Railroad*, 1962, 370 U.S. 626, at 629–32, 82 S.Ct. 1386, at 1388–90, 8 L.Ed.2d 734. But dismissal with prejudice is an extreme sanction which should be used only "where 'a clear record of delay or contumacious conduct by the plaintiff' exists". *Anthony v. Marion County General Hospital*, 5 Cir. 1980, 617 F.2d 1164, 1167, *quoting Gonzalez v. Firestone Tire & Rubber Co.*, 5 Cir. 1978, 610 F.2d 241, 247. *See Hildebrand v. Honeywell, Inc.*, 5 Cir. 1980, 622 F.2d 179, 181; Comment, Sanctions at Pretrial Stages, 72 Yale Law Journal 819 (1963). Of course, "*Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts". *Gibson v. Berryhill*, 1973, 411 U.S. 564, at 577, 93 S.Ct. 1689, at 1697, 36 L.Ed.2d 488.